## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD FARRELL,** | : | **No. 1:23-CV-1916** |
| | : | |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

### I.   Introduction

Plaintiff Edward Farrell seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits and supplement security income under Titles II & XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

This matter comes before the Court on Farrell's claim that Administrative Law Judge ("ALJ") Michelle Wolfe erred when she

---

[1] Frank Bisignano was confirmed as the Commissioner of the Social Security Administration on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted for Leland Dudek as the defendant in this suit.

evaluated the medical opinion evidence of record. Doc. 13 at 6–10. The matter is fully briefed and ripe for decision.

As explained below, the ALJ's conclusions when addressing the medical opinion evidence is supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the Court will affirm the Commissioner's decision to deny Farrell's claim for social security disability benefits and supplement security income.

## II.    **Background**

On October 28, 2021, Farrell applied for Title II social security disability benefits and Title XVI supplement security income, alleging complete disability from a myriad of impairments, including diabetes, neuropathy, gout, hypertension, hypothyroidism, obesity, chronic pain, and high cholesterol. Doc. 12 at 69, 217–34 (hereinafter referred to as "Tr."). The Social Security Administration initially denied Farrell's application in February 2022, and upon reconsideration in April 2021. Tr. 103–18, 123–38. Farrell thereafter requested a hearing before an ALJ. *Id.* at 161.

On August 30, 2022, ALJ Wolfe presided over Farrell's hearing. The hearing concerned whether Farrell was disabled within the meaning of the Social Security Act since June 26, 2020. *Id.* at 10. At the hearing, ALJ Wolfe received various evidence of record, including clinical records, medical history, medical expert reports, vocational expert testimony, and Farrell's own testimony. *Id.* at 37–65.

On October 28, 2022, ALJ Wolfe issued a decision concluding that Farrell was not disabled from June 26, 2020, to the date of the decision. *Id.* at 7–9. ALJ Wolfe reached that conclusion by employing the five-step analytical process required under the Social Security Act to evaluate disability insurance and supplement security income claims. *See* 20 C.F.R. § 404.1520(a)(4).

The process requires sequential consideration of: (1) whether the claimant is engaged in substantial gainful work activity; (2) the medical severity of the claimant's impairments; (3) whether the impairment meets or equals a defined list of impairments; (4) a comparison between the claimant's past relevant work and residual functional capacity, *i.e.*, the most work that a claimant can perform despite his or her limitations on a regular and continuing basis, *see* 20 C.F.R.

3

§ 404.1545(a); and (5) an assessment of the claimant's residual functional capacity and his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v). Should a claimant proceed past the first three steps of the analysis, the Commissioner will not find the claimant disabled when he or she can perform past relevant work, or adjust to other work, under the third and fourth steps, respectively. *Id.* at § 404.1520(a)(4)(iv)–(v), (f), (g).

Applying that analysis, ALJ Wolfe first determined that Farrell met the insurance requirements of the Social Security Act, *see* 20 C.F.R. § 404.130, through December 31, 2025. Tr. 13. ALJ Wolfe also found that Farrell had not engaged in substantial gainful activity between June 26, 2020, through the date of the decision. *Id.*

At the second step of the analysis, ALJ Wolfe found that Farrell suffered from three severe impairments: diabetes, obesity, and neuropathy. *Id.* ALJ Wolfe also identified several non-severe impairments, including syphilis; gout; hypertension; partial thickness burn on fingers; hypothyroidism; hypercholesterolemia; alcohol abuse; and a history of tobacco abuse. *Id.* She found that Farrell either suffered from these latter impairments for an insufficient duration, *i.e.*

less than a year, that they failed to "cause any functional limitations[,]" or that treatment had all but resolved the conditions. *Id.* ALJ Wolfe therefore concluded that the record established "these impairments have [no] more than a minimal effect on the claimant's ability to perform basic work activities." *Id.*

Moving to the third step of the analysis, ALJ Wolfe determined that Farrell's severe impairments failed to meet or medically equal one of those listed in the Social Security Administration's regulations. *Id.* at 14. Farrell thus did not automatically qualify as disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

Accordingly, ALJ Wolfe proceeded to determine Farrell's residual functional capacity, before addressing the final two steps in the sequential analysis. Based on the evidence of record, ALJ Wolfe concluded that Farrell could perform sedentary work, subject to additional limitations:

> The claimant is limited to no more than occasional balancing; stooping; crouching; crawling; kneeling; and climbing of ramps and stairs, but may never climb on ladders, ropes, or scaffolds. Additionally, the claimant is unable to push or pull

with the lower extremities including foot controls. Further, the claimant is limited to frequent exposure to temperature extremes of cold, wetness, vibrations, and hazards including moving machinery and unprotected heights.

Tr. 15.

In reaching that conclusion, ALJ Wolfe analyzed one area in particular that is germane to this opinion. Specifically, ALJ Wolfe evaluated several medical opinions in determining the limitations imposed by Farrell's physical impairments. In doing so, the ALJ identified which aspects of the opinions she found consistent or inconsistent with the medical evidence of record:

> The undersigned considered the state agency opinions of Dr. Angela Teresa Walker and Dr. Crescenzo G. Calise and found them partially persuasive (Exhibits 3A, 4A, 5A, 6A). The doctors indicate the claimant is able to lift and carry in the light exertional range, but standing and walking is limited to 2 hours, with a handheld assistive device being necessary for ambulation. They also note that the claimant could frequently stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs and balance, but may never climb ladders, ropes, or scaffolds. Lastly, they indicate the claimant is to avoid concentrated exposure to extreme cold, vibration, and hazards. To the extent the reduced walking and standing lower the claimant to sedentary work, and they indicate that the claimant requires postural and environmental limitations, their opinions are consistent with the longitudinal record. However, the lifting and carrying in the light exertional class is an overestimate of the claimant's capabilities when the longitudinal record is examined. Supporting a limitation to sedentary, is the claimant's

6

diabetes, obesity, and neuropathy. Specifically physical examination findings of edema in his legs and loss of sensation in his feet, an elevated A1C throughout the relevant time, and the claimant's reports of numbness and tingling in his feet support the same. In regards to their indication that the claimant needs a cane to ambulate, the record, does not support the same. Specifically, the only examination the claimant presented to with a cane was the consultative examination. Notably, all of the claimant's examinations note no atrophy, cyanosis, or clubbing, and the only examination that noted an abnormal gait was when the claimant presented to his primary care physician for a disability evaluation. That said, his primary care physician did not recommend or prescribe a cane after that examination. Thus, while a lower extremity limitation is necessary, having the claimant limited to jobs that do not involve pushing or pulling with the lower extremities, or operate foot pedals, adequately protects the claimant. Accordingly, the record does not support the need for a cane or assistive device. Moreover, the mentioned findings relative to the claimant's diabetes, neuropathy, and obesity support limiting the claimant to no more than occasional postural maneuvers, except climbing of ladders, ropes, or scaffolds, and frequent exposure to extremes of cold, wetness, vibrations, and hazards. For these reasons, the doctor's opinions are partially persuasive.

The undersigned considered the opinion of CRNP Cywinski from January 14, 2022 and did not find it persuasive (Exhibit 3F). CRNP Cywinski indicates the claimant is able to lift and carry up to 20 pounds occasionally, and can sit for a half hour, stand for 15 minutes, and walk 10-15 during an 8-hour workday. She also indicates that the claimant requires the use of a cane to ambulate. Further, she notes that the claimant can use both of his hands frequently to handle, finger, and feel, and occasionally to reach in all directions, and push and pull. Also, she indicates the claimant is able to use both of his feet occasionally to operate foot controls. Environmentally, she indicates the claimant can occasionally

climb ramps and balance, but may never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. Furthermore, she notes that the claimant is limited to loud heavy traffic. Lastly, she indicates that the claimant is unable to walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single handrail. CRNP Cywinski's opinion is not consistent with the longitudinal record, nor is it supported by her own examination. Here, while the claimant has diabetes and his BMI classifies him as obese throughout the relevant time, and his examinations noted findings consistent with neuropathy as of December 2021, and he has edema in his legs and loss of sensation in his feet, as there is no atrophy, ulcers, or wounds, no slow healing infections, no diabetic retinopathy, no cardiac arrhythmia or heart failure, and no cognitive impairments, the limitations outlined by CRNP Cywinski are not consistent with the longitudinal record. These mentioned findings support a limitation to sedentary, but the sit, stand, and walk limitations outlined by CRNP Cywinski would eliminate sedentary work, as they result in the claimant only being able to work for one hour a day. Relative to the same, the instructions on the form advise the provider that if the sit, stand, and walk limitations do not total 8 hours, that they are to indicate what the claimant would be doing for the remaining time, but CRNP Cywinski does not address the same. The undersigned also notes that this reasoning applies to a finding that the limitations that the claimant is unable to walk a block on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single handrail are not supported. In regards to her indication that the claimant needs a cane to ambulate, the record, and her own examination findings do not support the same. Specifically, the only examination the claimant presented to with a cane was the consultative examination. Notably, the examinations before the consultative examination and after, note no atrophy, cyanosis, or clubbing, and the only examination that noted an abnormal gait was when the claimant presented to his primary care physician for a disability evaluation. That

said, his primary care physician did not recommend or prescribe a cane after that examination. Thus, while a lower extremity limitation is necessary, having the claimant limited to jobs that do not involve pushing or pulling with the lower extremities, or operate foot pedals, adequately protects the claimant. Furthermore, the reach, finger, handle, feel, and push/pull limitations outlined by CRNP Cywinski relative to her upper extremity are not supported by her own examination which notes no upper extremity strength deficit or sensation loss. Also, the only examination that reflected any upper extremity weakness was done after her consultative examination was performed, when the claimant presented to her primary care physician for a disability evaluation in July of 2022. Even so, this one examination does not support these limitations. Moreover, the mentioned findings relative to the claimant's diabetes, neuropathy, and obesity support limiting the claimant to no more than occasional postural maneuvers, except climbing of ladders, ropes, or scaffolds, and frequent exposure to extremes of cold, wetness, vibrations, and hazards, but do not support the extremely limited postural maneuvers outlined by CRNP Cywinski, or the additional environmental limitations, especially the noise limitation.

*Id.* at 19–20. In consideration of these findings, the objective medical evidence, and Farrell's statements concerning his symptoms, ALJ Wolfe concluded that:

Overall, the objective evidence does not support the alleged intensity and persistence of symptoms. Therefore, the undersigned finds that the claimant is capable of performing work in accordance with the residual functional capacity described above.

*Id.* at 20–21.

9

Having determined Farrell's residual functional capacity to perform sedentary work subject to limitations, and rejected several grounds for further limitation, including the use of a cane, ALJ Wolfe proceeded to the fourth step of the analysis to determine whether Farrell was disabled within the meaning of the Social Security Act. Here, with assistance from a vocational expert's testimony, ALJ Wolfe compared Farrell's past relevant work and residual functional capacity, finding that Farrell was able to perform his prior employment as an adjustment clerk, night auditor, and produce buyer. *Id.* at 21. Moreover, the ALJ found that, even if she had incorporated more extensive limitations into Farrell's residual functional capacity, such as the aforementioned use of a cane, the vocational expert testified that Farrell would still be able to perform those three jobs. *Id.* at 22.

In accordance with her step four finding that Farrell could perform his past relevant work, ALJ Wolfe concluded that Farrell was not disabled and denied his application for disability benefits. *Id.* The evaluation thus did not proceed to the fifth step of the sequential analysis. Farrell unsuccessfully appealed the decision to the Social Security Administration's Appeals Council, which denied his request to

10

on August 31, 2023. *Id.* at 1. Having exhausted his administrative remedies, Farrell's instant appeal to the district court followed.

Farrell initiated this action with the Court on November 17, 2023. Doc. 1. The Commissioner filed an answer denying Farrell's claim of error and provided the operative transcripts from the disability proceedings on January 8, 2024. Docs. 11, 12. The parties filed their respective briefs on February 6, 2024, and February 22, 2024. Docs. 13, 15. The matter is thus ripe for decision.

In his brief, Farrell alleges two interrelated errors that warrant reversal or remand. Doc. 13 at 6–10. Specifically, Farrell alleges that ALJ Wolfe's evaluation of the medical opinion evidence was contrary to regulation, and that her evaluation of the opinion of consultative examiner CRNP Tara Cywinski was not supported by substantial evidence. *Id.*

## III.    Discussion

### A.    Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are

11

supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This Court's role is not to reweigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of

12

reasoning for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted). An ALJ meets that standard by stating "in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence standard is unmet when ALJ fails to resolve conflicts created by countervailing evidence).

Here, ALJ Wolfe's factual findings were supported by substantial evidence in the record, and the reasoning underlying those conclusions was sufficient to enable judicial review.

### B.    The ALJ's Evaluation of the Medical Opinions

Farrell challenges ALJ Wolfe's determination that CRNP Cywinski's opinion was unpersuasive, because ALJ Wolfe failed to recontact Cywinski for clarifying information. Doc. 13 at 6–7. Farrell

also contends that ALJ Wolfe generally erred in evaluating the opinions of Dr. Angela Walker, Dr. Crescenzo Calise, and CRNP Cywinski because, instead of assessing the supportability and consistency of these opinions, the ALJ allegedly and "impermissibly inserted her own lay opinion" to discard their limitation findings. *Id.* at 9–10. But Farrell's disagreement with the ALJ's assessment of those opinions does not warrant remand where, as here, those evaluations are supported by substantial evidence and comported with all applicable regulatory requirements.

On January 14, 2022, CRNP Cywinski examined Farrell and completed a medical source statement form. Tr. 438–54. Of relevance, she described Farrell as being obese and suffering from diabetes, hypertension, hypothyroidism, high cholesterol, unstable gait, edema from the ankles to the mid-calves, and with a past history of gout, but also presenting with normal skin, no muscle atrophy, healthy eyes, and a regular heart rhythm. *Id.* at 440–42. In consideration of these findings, CRNP Cywinski opined that Farrell could sit for one-half-hour, stand for 15 minutes, and walk for 10-15 minutes during an eight-hour workday, although she failed to indicate what activities Farrell

14

would do in lieu of these three things for the remaining workday. *Id.* at 444. Additionally, CRNP Cywinski opined that Farrell required the use of a cane to ambulate, that he was unable to walk a block at a reasonable pace on rough or uneven surfaces, and that he was unable to climb a few steps at a reasonable pace even with the assistance of a handrail. *Id.* at 448.

On January 26, 2022, Dr. Walker evaluated the medical evidence pertaining to Farrell's conditions and found that Farrell could frequently lift and carry 10 lbs., occasionally lift and carry 20 lbs., sit for six hours of an eight-hour workday, and walk or stand for two hours of an eight-hour workday with the use of an assistive device. *Id.* at 71–72. The doctor also found that Farrell was limited to frequently stooping, kneeling, crouching, and crawling; occasionally balancing and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; and that he should avoid concentrated exposure to extreme cold, vibration, and hazards. *Id.* at 72. On April 28, 2022, Dr. Calise likewise reviewed the medical evidence pertaining to Farrell's conditions and made identical findings to those of Dr. Walker. Tr. 83–84.

15

Under the current regulations, medical opinions are not entitled to any specific weighting, and are instead evaluated based on their persuasiveness. 20 C.F.R. §§ 404.1520c(a), 404.1520c(b). An ALJ determines the persuasiveness of a prior medical finding or medical opinion by assessing five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F. R. § 404.1520c(a)–(c). The factors related to the substance of medical opinions–supportability and consistency–are the "most important factors" for consideration. 20 C.F.R. § 404.1520c(b)(2). Examining supportability entails a review of the opinion's basis in relevant "objective medical evidence and supporting explanations presented by a medical source"; consistency is assessed based on how consistent a finding or opinion is "with the evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 404.1520c(c)(1)–(2).

The Court of Appeals explained in *Cotter v. Harris* that when weighing the record, an ALJ "cannot reject evidence for no reason or the wrong reason" and must explain "why probative evidence has been rejected . . . so that a reviewing court can determine whether the

16

reasons for rejection were improper." 642 F.2d 700, 706–07 (3d Cir. 1981). This does not mean, however, that the ALJ must undertake an exhaustive discussion of all of the evidence. *See, e.g., Fargnoli*, 247 F.3d at 42; *Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record.").

Here, ALJ Wolfe found Dr. Walker's and Dr. Calise's opinions partly persuasive. She explained that their sitting, walking, standing, and postural limitations, to the extent they limited Farrell to sedentary work, were consistent with and supported by the longitudinal evidence of record, including Farrell's symptoms of edema, loss of sensation and tingling in the feet, and elevated blood sugar levels caused by his diabetes, obesity, and neuropathy. Tr. 19. By contrast, the ALJ found that the physicians' lifting, carrying, stooping, kneeling, crouching, and crawling limitations were inconsistent with and unsupported by the record, because they overestimated Farrell's capabilities in light of his symptoms and impairments. *Id.*

Moreover, ALJ Wolfe concluded that the physicians' findings that Farrell required the use of a cane to walk or stand was not supported by the record, because he was never prescribed a cane, he presented to a

medical source with a cane only once, and he did not have symptoms usually associated with use of a cane, like atrophy, clubbing, or cyanosis. *Id.* Instead, based on the evidence, ALJ Wolfe concluded that Farrell was limited to no pushing or pulling with the lower extremities and no operating foot pedals. *Id.* Accordingly, the ALJ found the two physicians' opinions partly persuasive. *Id.*

In comparison, ALJ Wolfe found the opinion of CRNP Cywinski unpersuasive. The ALJ first explained that although the evidence showed Farrell was obese, had diabetes, and suffered from neuropathy and edema, this evidence did not support the severe limitations found by Cywinski; particularly, limitations of sitting, standing, and walking for one hour out of an eight-hour workday, and restrictions on walking a block on rough or uneven surfaces or climbing stairs at a reasonable pace. *Id.* at 20. In fact, ALJ Wolfe found that the severe limitations suggested by Cywinski were wholly inconsistent with record evidence, including Cywinski's own examination of Farrell, which showed he had healthy eyes, normal skin, a regular heart rhythm, and that he had no muscle atrophy or cognitive impairments. Tr. 20, 440–42.

Moreover, the ALJ took issue with Cywinski's failure to explain what activities Farrell would do for those seven hours of the workday he could not sit, stand, or walk, as required by the medical source statement form. *Id.* at 20, 444. Likewise, for the same reason that ALJ Wolfe rejected Dr. Walker's and Dr. Calise's suggestion that Farrell needed a cane, she rebuffed CRNP Cywinski's parallel recommendation. *Id.* at 20. Finally, the ALJ dismissed Cywinski's finding that Farrell had upper extremity limitations, given that Cywinski's own examination of Farrell showed he had no strength deficits or loss of sensation. *Id.* Thus, based on the medical evidence surrounding Farrell's impairments and symptoms, ALJ Wolfe rejected Cywinski's "extremely limited postural maneuver[]" limitations and additional environmental limitations in favor of her own more moderate limitations in those areas. *Id.* Taken together, ALJ Wolfe found CRNP Cywinski's opinion unpersuasive. *Id.*

In light of the above, Farrell's contention that ALJ Wolfe "impermissibly inserted her own lay opinion" instead of sufficiently evaluating the medical opinions under the factors of supportability and consistency (Doc. 13 at 9–10), is without merit. First, as the

19

Commissioner correctly notes (Doc. 15 at 14–15, 21–22), Farrell's challenge that ALJ Wolfe failed to match her own limitation findings to those of the medical opinions yields no relief. "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986). Importantly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). As such, the mere fact that ALJ Wolfe's findings are not identical to those in the medical opinion evidence cannot be error.

Farrell also seeks to leverage *Metzger v. Berryhill*, 2017 WL 1483328, at *5 (M.D. Pa. 2017), for the proposition that when an ALJ finds less restrictive limitations than those set forth in the medical opinions, that specific finding is subject to greater scrutiny. Doc. 16 at 4. However, as the Commissioner correctly notes (Doc. 15 at 20 n.4), except for a cane-related limitation, the ALJ's own limitation findings either matched those of Dr. Walker and Dr. Calise, or were more robust. *Compare* Tr. 15 *with* Tr. 71–73, 83–86.

20

Additionally, although ALJ Wolfe did not include a cane-related limitation in Farrell's residual functional capacity, the vocational expert testified that sufficient jobs in the national economy remained for Farrell, even with a cane-related limitation. *Id.* at 22. Thus, even if ALJ Wolfe's exclusion of a cane-related limitation from Farrell's residual functional capacity was in error, it was harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[R]emand is not required here because it would not affect the outcome of the case.").

Second, Farrell's contention that ALJ Wolfe made "speculative inferences" while evaluating the medical opinions, and thus inserted her own lay opinion rather than assessing supportability and consistency (Doc. 13 at 9–10), does not jibe with the record. ALJ Wolfe's evaluation of the medical opinion evidence, as described *supra*, exhaustively compared the objective medical evidence with those opinions in determining their consistency and support, ultimately finding the opinions' respective persuasive values.

Specifically, Farrell charges that ALJ Wolfe made speculative inferences when evaluating CRNP Cywinski's opinion by concluding that Farrell had no "atrophy, ulcers, or wounds, no slow healing

infections, no diabetic retinopathy, no cardiac arrhythmia or heart failure, and no cognitive impairments." Doc. 13 at 9. That determination, however, was not premised on mere speculation, but rather on CRNP Cywinski's own examination. In particular, ALJ Wolfe highlighted CRNP Cywinski's findings that showed Farrell had healthy eyes, normal skin, a regular heart rhythm, and that he had no muscle atrophy or noted cognitive impairments. *Compare* Tr. 20 ("there is no atrophy, ulcers, or wounds, no slow healing infections, no diabetic retinopathy, no cardiac arrhythmia or heart failure, and no cognitive impairments,") *with* Tr. 440–42 ("Skin exam within normal limits"; "[f]undi normal"; "[r]egular [heart] rhythm"; "[n]o muscle atrophy evident."); *see also* Tr. 424, 438, 464, 494–95, 620, 624, 628–29.

It was well within ALJ Wolfe's authority to "weigh the medical evidence and draw [her] own inferences." *Kertesz*, 788 F.2d at 163. Indeed, in combination with the other objective medical evidence of record, several conclusions are readily apparent, including that: a finding of normal skin necessarily means having no wounds, no slow healing infections, and no ulcers; a finding of healthy eyes necessarily means no diabetic retinopathy; a finding of a regular heart rhythm

necessarily means no cardiac arrhythmia and suggests no heart failure; a finding of no muscle atrophy necessarily means no atrophy; and a diagnosis of no cognitive disorders necessarily means no cognitive impairments. Tr. 20. In other words, ALJ Wolfe did not displace the objective medical evidence with her own opinion to draw speculative inferences; rather, she largely drew from the objective medical findings in CRNP Cywinski's own examination of Farrell to help evaluate the consistency and supportability of Cywinski's recommended limitations.

Farrell's contention that the ALJ erred by not recontacting CRNP Cywinski is similarly flawed. As the Commissioner correctly notes (Doc. 13 at 23–26), ALJ Wolfe was under no obligation to recontact CRNP Cywinski. For one, the regulations only provide for re-soliciting a medical source when there is insufficient evidence for an ALJ to determine disability status, or the medical evidence as a whole is inconsistent. *See* 20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2). Given the breadth of evidence here, and the relative consistency of the evidence in establishing that Farrell is diabetic, obese, and that he suffers from neuropathy and edema (*see* Tr. 424, 440–42, 464, 494–95, 620, 624, 628–29), that standard is not met.

Moreover, the regulations make clear that, in the event the evidence of record is inconsistent or insufficient, an ALJ *may* recontact a medical source, not that they must. *See* 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i) ("we may re-contact your medical source"); 404.1520b(b)(2)(iv), 416.920b(b)(2)(iv) ("[w]e may ask you or others for more information"). As such, ALJ Wolfe had no regulatory duty to recontact CRNP Cywinski, and there is no respective error.[2]

Finally, Farrell's contention that ALJ Wolfe's evaluation of CRNP Cywinski's opinion is not supported by substantial evidence misapprehends the evaluation process. Rather than require an ALJ to elaborately evaluate a medical opinion, the regulations only require that an ALJ analyze an opinion's supportability and consistency against the objective medical evidence. 20 C.F.R. § 404.1520c(b)(2). Here, as discussed at length, the ALJ comprehensively evaluated the consistency and supportability of Cywinski's opinion against the objective medical evidence (Tr. 19–20, 424, 440–42, 464, 494–95, 620, 624, 628–29), and

---

[2] Farrell cites *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198 (3d Cir. 2008) and *Hartman v. Colvin*, 2014 WL 1784084 (W.D. Pa. 2014) in support of his position. But, as explicitly recognized in *Hartman*, both those cases involved claims lodged prior to March 26, 2012, when the regulation's recontact provision was amended to change the language from mandatory to permissive. 2014 WL at *9 n.3. Thus, neither case applies here, as Farrell's claim was filed in 2021.

therefore her conclusion that the opinion did not merit persuasive weight satisfied her regulatory duty. *See, e.g., Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (holding medical opinions that are inconsistent with and unsupported by the medical evidence are not persuasive or controlling); *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990) (same). As ALJ Wolfe, at a minimum, relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" *Pierce*, 487 U.S. at 565 (quoting *Consol. Edison Co.*, 305 U.S. at 229), her finding that CRNP Cywinski's opinion was not persuasive is supported by substantial evidence.

To be clear, this Court's role is not to reweigh the evidence to make its own factual determinations. *Diaz*, 577 F.3d at 504. Rather, it is simply to review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." *Id.* Consequently, because ALJ Wolfe evaluated the relevant opinion evidence pursuant to her regulatory duty to assess persuasiveness, and her findings are supported by substantial evidence, they will not be disturbed.

IV.  **Conclusion**

Accordingly, the Court will affirm the decision of the Commissioner and deny the Plaintiff's request for relief. A separate order shall be issued.

Date:  October 14, 2025          ***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge